IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
UNITED STATES OF AMERICA,                 :    CRIMINAL ACTION
         Plaintiff,                                    :
                                                             :
v.                                                           :    No. 2:11-409-1
                                                             :
TAHIB SMITH ALI,                                  :
         Defendant.                                :
_____

Goldberg, J.                                                                                June 20, 2012

## MEMORANDUM OPINION

### I.   BACKGROUND

Defendant, Tahib Smith Ali, has been charged in a multi-count indictment with health care fraud and related offenses.[1]  These charges arise from allegations of fraudulent billing practices committed by Defendant in operating the Oasis Holistic Healing Village, a practice formerly owned and operated by Dr. Paul Bodhise, a licensed chiropractor.  The indictment alleges that Defendant, who is not a chiropractor, submitted over $1.1 million in fraudulent claims to Independence Blue Cross for chiropractic services under Dr. Bodhise's name and medical provider number.  These claims were for treatments and services allegedly performed by Defendant while falsely representing that he was a licensed chiropractor and physical therapist, as well as for treatments and services that were never performed at all.

Currently before the Court is the Government's motion in limine seeking to introduce evidence under FED. R. EVID. 404(b) regarding what the Government posits was the Defendant's role in a prior

---

[1] Specifically, the indictment charges Smith Ali with fifty counts of health care fraud in violation of 18 U.S.C. § 1347, fifty counts of false statements in a health care matter in violation of 18 U.S.C. § 1035, and fifty counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.

insurance fraud scheme that resulted in a 2007 state court misdemeanor conviction. Specifically, the Government seeks to show that the Defendant previously staged accidents in order to sign up patients and falsified treatment sheets by going to patients' homes and collecting signatures. (Tr. 5/30/2012, p. 15.) For reasons that follow, the Government's motion will be denied.

## II.   LEGAL ANALYSIS

Pursuant to 404(b), evidence of other crimes may not be admitted to show a criminal propensity, but "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." To be admissible, "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted." United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)). The burden of showing admissibility rests with the Government. Id.

The Government argues that Defendant's prior conduct is probative of his knowledge of fraudulent billing practices, and his fraudulent intent. The Government asserts that Defendant's prior conduct goes to the "heart of the government's theory of the case, which is this Defendant didn't just stumble into this chiropractor's office. He had experience in how chiropractic offices were managed, how [treatments] were billed and how they were billed fraudulently." (Tr. 5/30/2012, p. 9.) While the Government acknowledges that the Defendant was not a chiropractor in the prior case, it points out that Defendant "pretended to be one in the [current] case because he learned how to do it in the first case and that's why these two cases are linked." (Tr. 5/30/2012, p. 22.)

To prove Defendant's prior conduct, the Government seeks to introduce three pieces of evidence: (1) the Defendant's prior guilty plea; (2) the Affidavit of Probable Cause, which was

incorporated into the guilty plea colloquy; and (3) the testimony of Greg Shore, the prosecutor in Defendant's prior case. (Tr. 5/30/12, pp. 14-18.) We will consider each piece of the proffered 404(b) evidence individually.

In 2007, Defendant pled guilty to a misdemeanor violation of 18 Pa.C.S.A. § 4117(b)(3), which prohibits a person from knowingly transmitting "referral information to a lawyer or health care professional for the purpose of receiving compensation or anything of value." The Government argues that this plea demonstrates that Defendant was "undoubtedly" exposed to insurance claim reimbursement practices and how the system could be used for fraud. (Gov.'s Mem. of Law, p. 5.)

However, the Defendant's receipt of referral fees does not support an inference that he obtained knowledge of the insurance claim or billing process. Indeed, receiving referral fees shares little similarity with the charges currently pending, and the elements of 18 Pa.C.S.A. § 4117(b)(3) do not suggest any involvement in billing or exposure to the insurance claim process. Rather, Defendant's prior conviction shows only that he referred patients in exchange for compensation and sheds no light on Defendant's knowledge or intent in the scheme with which he is currently charged.

Neither does the Affidavit of Probable Cause suggest that Defendant had knowledge of insurance claims or billing procedures. Because the Affidavit was incorporated into Defendant's 2007 guilty plea, it may be considered an admission by the Defendant regarding the conduct described therein. However, the entire sixteen paragraph Affidavit only contains the following five sentences pertaining to the Defendant:

> 1099 forms were issued to the defendant, Tahib Smith, in the amount of $22,375 in 2001 and $27,240 in 2002 for a total amount of $49,615. The checks issued to, and cashed by the defendant during this time disclose that checks were compensation to the defendant for providing persons to sign up as patients at All-Care Chiropractic.
>
> Tahib Smith was interviewed on July 8, 2004 by your affiant and SA Veneziale and stated he worked at All-Care for approx. 2 years as a therapist. He stated he has a

> CNA certificate, Certified Nursing Assistant, but is not a licensed physical therapist, the doctor said he didn't need to be. Smith acknowledged he was paid referral fees by Dr. Richard Walinsky of All-Care for bringing persons to sign up as patients, between 5 to 10 people, and the doctor paid him for the referrals, $500 for a car accident and $250 for a slip and fall.

While this Affidavit does state that Defendant was employed by All-Care as a therapist, it does not allege that Defendant was in anyway involved in the fraudulent billing practices of that business. The Affidavit only provides evidence that Defendant received referral fees for providing persons to sign up as patients, which is conduct consistent with the elements of § 4117(b)(3). Consequently, this proffered evidence does not contain any facts which suggest that Defendant gained knowledge of insurance or billing procedures through his involvement in the prior insurance fraud.

Finally, the Government argues that testimony from Greg Shore, the Assistant District Attorney who prosecuted Defendant in state court, will establish the Defendant's "deep involvement and the length of his involvement" in the prior insurance scheme. The Government represents that Shore will testify that Defendant staged accidents and falsified treatment sheets. (Tr. 5/30/2012, pp. 14-15, 31.) According to the Government, Shore learned of Defendant's conduct "through his own involvement in prosecuting the case through looking at documents," and by being "in court the day the Defendant pleaded guilty." (Id., pp. 16-17.)

The Government has offered few details regarding the specific testimony Assistant District Attorney Shore plans to offer, or the basis for that testimony. It is unclear to the Court whether Shore's testimony will be based upon personal knowledge, or whether such testimony will be premised upon information he learned from other sources such as investigators or detectives. Therefore, a significant question remains as to whether Shore's testimony would even be admissible.

When evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the

4

defendant has the propensity to commit the crime charged. United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994) (quoting Sampson, 980 F2d at 886). Having carefully considered the Government's 404(b) proffer, we conclude that the evidence suggests only that Defendant previously referred patients in exchange for monetary compensation. Other than the mention in the Affidavit of Probable Cause that Defendant was a "therapist," there is nothing in the record indicating that Defendant was involved in the chiropractic business or was aware of its billing practices. The evidence identified by the Government is not probative of Defendant's knowledge or intent in this case, and we therefore conclude that the Government has failed to demonstrate that Defendant's prior conduct is admissible for a proper purpose under Rule 404(b).

We further note that the prejudicial effect of the evidence is significant. Without sufficient detail and explanation, Defendant's prior conviction and the charges he now faces could both be mistakenly labeled as "insurance fraud," although the conduct necessary for the prior conviction is significantly different. As such, admission of such evidence creates a substantial risk that the jury will draw an impermissible inference of criminal propensity.[2]

Our Order follows.

---

[2] The government is of course free to clarify or amend its proffered 404(b) evidence, and request that the Court re-visit this issue.